# IN THE SUPREME COURT OF IOWA

Nos. 15–1373 & 16–0988

Filed June 1, 2018

**TSB HOLDINGS, L.L.C.** and **911 N. GOVERNOR, L.L.C.**,

    Appellants,

vs.

**BOARD OF ADJUSTMENT FOR THE CITY OF IOWA CITY,**

    Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - -   - - - - - - - - - - - - - - - -

**TSB HOLDINGS, L.L.C.** and **911 N. GOVERNOR, L.L.C.**,

    Appellants,

vs.

**CITY OF IOWA CITY, IOWA,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeals from the Iowa District Court for Johnson County, Mitchell E. Turner and Chad Kepros, Judges.

Developers seek further review of a court of appeals decision affirming the district court's orders denying them relief in certiorari proceedings against a municipality. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT IN NO. 15–1373 AFFIRMED; DISTRICT COURT JUDGMENT IN NO. 16–0988 REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Charles A. Meardon of Meardon, Sueppel & Downer P.L.C., Iowa City, and James W. Affeldt of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants.

Elizabeth J. Craig and Sara Greenwood Hektoen, Assistant City Attorneys, Iowa City, for appellee.

**MANSFIELD, Justice.**

Relying on a 1987 court order, developers sought the right to build apartments on certain adjoining properties they owned in Iowa City. After the City denied their site plans, the developers brought separate actions against the City and its Board of Adjustment. The district court ruled against the developers in both actions. The developers appealed. The court of appeals affirmed both judgments on the ground that enforcement of the 1987 order was barred by Iowa Code section 614.1(6) (2013), which provides that actions "founded on a judgment of a court of record" may only be brought within twenty years after the cause of action accrues. *See* Iowa Code § 614.1, .1(6). The developers asked for further review, which we granted.

On further review, we find the Board of Adjustment should have permitted the developers to proceed in accordance with the 1987 decree. We conclude the statute of limitations does not bar enforcement of the decree. We further conclude the developers are entitled to enforce the decree as "successors and assigns." Additionally, we reject the Board of Adjustment's argument that the decree had expired by its terms because "a use [had] been developed or established" on the properties. Therefore, we vacate the decisions of the court of appeals, reverse the district court judgment in favor of the Board of Adjustment, and remand with directions to enter judgment in favor of the developers in that proceeding.

**I. Background Facts and Proceedings.**

**A. The *Kempf* Decision and the Resulting Remand Order.** The properties at issue are six numbered, adjoining lots in Iowa City.[1] Lots

---

[1]We realize *Kempf v. City of Iowa City*, 402 N.W.2d 393, 395 (Iowa 1987), states there are seven numbered lots. However, upon examination of the record in this case, we believe there are six lots.

49–51 on the west front on North Dodge Street. Lots 8–10 on the east front on North Governor Street.

These properties were the subject of our decision in *Kempf v. City of Iowa City*, 402 N.W.2d 393 (Iowa 1987). Wayne Kempf and his partners[2] bought a four-acre tract in the near north side of Iowa City. *Id.* at 395–96. At the time of Kempf's purchase, the City had zoned the properties as R3B, a classification that permits office buildings and high density, multifamily residential housing. *Id.* at 395.

Kempf planned to build one office building and five apartment buildings on the lots, and invested $114,500 to purchase the whole tract and develop it for construction. *Id.* at 395–96. Kempf had completed construction of the office building on lots 8 and 9. *See id.* at 396. This building is located at 911 North Governor Street. Kempf then began construction of a twenty-nine unit apartment building on a part of lot 50. *See id.* This building is located at 902 North Dodge Street. Following vigorous neighborhood protests against the construction of the apartment building, the City revoked Kempf's building permit. *Id.* at 396–97.

Kempf commenced litigation. *Id.* at 397. The district court ordered the City to reissue the building permit and enjoined the City from preventing further construction. *Id.* After the completion of the apartment building in 1977, the City imposed a moratorium on all construction with the exception of single-family and duplex development. *Id.* In 1978, the City rezoned Kempf's tract and other tracts in the area. *Id.*

Kempf filed an amended petition, arguing the City's rezoning was arbitrary, capricious, and discriminatory, and the rezoning was an

---

[2]We refer to these plaintiffs collectively as Kempf except where otherwise stated.

unconstitutional taking. *Id.* at 398. Litigation between the parties culminated in our *Kempf* decision.

First, we held the application of the rezoning to the lots and portions of lots in the remaining 2.12 acres of the tract would be unreasonable. *Id.* at 400–01. We reasoned overwhelming evidence showed it would be economically unfeasible because "the cash flow income would not retire the debt[,]" "lending agencies [would not] be willing to loan for such purposes in these circumstances[,]" and "there would be no market for single-family or duplex residences on the remaining Kempf tract." *Id.* at 398, 400.

Second, we considered the present and future status of the remaining lots. *Id.* at 401. We held

> ordinances numbered 78-2901 through 78-2906 may apply to the Kempf property, provided, however, that Kempf shall be permitted to proceed with the development of apartment buildings, as shown by the record in this case, to the extent that such buildings conform to the ordinances in effect prior to the 1978 rezoning . . . . The [C]ity shall be enjoined from prohibiting this use of the property by Kempf. Further development or redevelopment of the property beyond that contemplated by Kempf as shown by this record and noted in this opinion, whether carried out by Kempf or future owners, will be subject to the amended ordinances above designated.

*Id.*

We remanded the case to the district court to enter a ruling consistent with our opinion. *Id.*

On remand, the district court issued an order that described the undeveloped 2.12 acres of the Kempf tract, specifically lots 10, 49, a part of 50, and 51. The court further provided,

> The owner or owners of said properties, and their successors and assigns, shall be permitted to develop those properties with multiple dwellings (apartments) in accordance with the provisions applicable to the R3B zone in effect on May

30, 1978, prior to the rezoning of said real estate[,] which was finalized on June 28, 1978.

. . . The City is and shall be enjoined from interfering with development of those properties as herein provided.

Once a use has been developed or established on any of the above-described properties, further development or redevelopment of that property shall be subject to the zoning ordinances in effect at the time such further development or redevelopment is undertaken.

All parties, including the City, approved this language prior to the court entering its decree.[3]

After entry of the remand order, Kempf constructed a twelve-unit apartment building on a part of lot 50. This building is located at 906 North Dodge Street. Kempf also granted the local energy company an electrical easement across parts of lots 49 and 50 to provide utilities to the new apartment building.[4] Other than the twelve-unit apartment building and the electrical easement, Kempf did not further develop the properties.

**B. Events Leading Up to the Current Litigation.** Over time, Kempf and his partners divested themselves of the properties. In 2005, AB Investments, L.L.C., a Kempf-related entity, sold lots 49–51 to Main Street Partners. Later that year, Main Street Partners conveyed the lots to Iowa-Illinois Square, L.L.C., a company owned by the Clark family. In 2009, Iowa-Illinois Square, L.L.C. sold the lots to TSB for $3.4 million. Thus, TSB has acquired lots 49–51, although it did not acquire them directly from Kempf.

---

[3]In Iowa, when we "remand[] for a special purpose, the district court, upon the remand, is limited to do the special thing authorized by this court in its opinion, and nothing else." *See Kuhlmann v. Persinger*, 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967). Regardless, both Kempf and the City approved the remand order entered by the district court. Neither party challenged the propriety of the remand order below. Thus, the remand order provides the applicable law in this case.

[4]According to the March 28, 2016 district court order in the action against the Board of Adjustment, the parties agree the electrical easement runs through lots 49 and 50.

In addition to the land itself, TSB now owns the twenty-nine unit apartment building situated on lot 50 whose address is 902 North Dodge Street and the twelve-unit apartment building situated on lot 50 whose address is 906 North Dodge Street.

In 2012, AB Investments, L.L.C. sold lots 8–10 to 911 North Governor, L.L.C. The sale included the office building that Kempf had built on lots 8 and 9 in the early 1970s. TSB has since acquired 911 North Governor, L.L.C.[5] Therefore, through series of transactions, TSB now owns or controls the lots that are the subject of the *Kempf* litigation and the remand order.

In November 2012, the City amended its comprehensive zoning plan to designate properties in the area, including the properties at issue in this case, as single family and duplex residential properties. On March 19, 2013, the City rezoned the properties to comply with the comprehensive zoning plan by passing ordinance 13–4518. This ordinance provides in relevant part,

> WHEREAS, the City of Iowa City has initiated a rezoning of property located at 906 North Dodge Street from Multi-family (R3B) to High-Density Single-Family Residential (RS-12); property located [at] 911 North Governor Street from Commercial Office (CO-1) to High-Density Single-Family Residential (RS-12); property located at 902 and 906 North Dodge Street from Multi-family (R3B) to Medium-Density Multi-Family Residential (RM-20) in order to bring the properties into compliance with the City's Comprehensive Plan; and
>
> WHEREAS, City plans and policies, including the Comprehensive and Strategic Plan, have changed considerably in the last 40 years, with the current Comprehensive Plan and Historic Preservation Plan containing policies to encourage preservation of the single family character of the City's older single family neighborhoods and policies that serve to stabilize these

---

[5]From this point forward, we refer to TSB Holdings, L.L.C. and 911 N. Governor, L.L.C. collectively as TSB.

neighborhoods by encouraging a healthier balance of rental and owner-occupied housing rather than redevelopment for housing that serves primarily short-term residents; and

WHEREAS, the Central District Plan indicates that R3B zoning is obsolete and the properties with this designation should be rezoned to a valid zoning designation;

. . . .

WHEREAS, the Comprehensive Plan policies in place during the 1960s that led to the R3B zoning on Dodge Street encouraged demolition and redevelopment of older neighborhoods at higher densities; and

WHEREAS, the City's Zoning Code no longer includes the R3B zoning designation due to its inconsistency with the City's current comprehensive planning goals and polices; . . . .

Iowa City, Iowa, City Code § 13–4518 (2013). The ordinance went into effect on March 28.

On January 10 of that same year, before ordinance 13–4518 had been published, TSB submitted a site plan to obtain the City's approval for development on 902 and 906 North Dodge Street. Julie Tallman, the City's regulation specialist, evaluated the site plan under the *Kempf* remand order and noted various deficiencies with it.

On January 22, the City announced the rezoning and imposed a moratorium to prevent the approval of any site plan in light of the anticipated rezoning. Nevertheless, on January 31, TSB submitted a revised site plan that proposed developing lots 9, 10, 49, 51, and a portion of lot 50, and demolishing the existing parking area on lots 9, 10, 49, and a portion of lot 50.

Kempf had not developed lots 10, 49, and 51, and they had no buildings on them at the time TSB submitted this site plan. Kempf had developed only a very small portion of lot 50, with substantially all of lot 50 remaining vacant at the time TSB submitted its site plan.

On February 7, without evaluating the implications of the *Kempf* remand order on the site plan, Tallman denied the site plan on the ground that multifamily dwellings (apartment buildings) did not comply with the existing commercial office (CO-1) zone or the proposed high-density single-family residential (RS-12) rezone.

On April 18, TSB submitted a new site plan, which proposed construction of apartment buildings on lots 10, 49, and 51 only. Tallman denied this plan on April 29, viewing it as materially identical to the January 31 site plan. The City also noted the March 28 effective date of ordinance 13–4518 did not alter the situation because the moratorium had been in effect at the time of the January 31 site plan, and the moratorium mandated compliance with the proposed rezoning.

**C. Action Against the City.** In February 2013, after ordinance 13–4518 had been proposed but before it had been adopted, TSB filed a petition for declaratory relief and temporary injunction against the City. In count I, TSB requested "a declaratory decree adjudging the [City] may not alter the zoning of the propert[ies], and that if the [City] does so, that the altered regulation is, to the extent it applies to the propert[ies], unconstitutional and void." In count II, TSB sought a temporary injunction that would restrain the City from rezoning the properties until a hearing.

In April, following the approval of ordinance 13–4518, TSB also filed a petition for writ of certiorari against the City directly challenging the legality of ordinance 13–4518. Specifically, TSB alleged

> [t]he change i[n] the zoning classification was improper, unreasonable, arbitrary and capricious, illegal, contrary to prior rulings of the Supreme Court of Iowa and of the Johnson County District Court, and would result in an unconstitutional taking of [TSB]'s property.

TSB requested the court to issue a writ of certiorari annulling the City's rezoning. On July 16, 2014, the court consolidated the two actions against the City.

Both parties filed motions for summary judgment. The court granted the City's summary judgment motion on all claims and denied TSB's summary judgment motion. First, the court found ordinance 13–4518 did not violate *Kempf* and the remand order because the City had legislative authority to rezone the properties. Second, the court found the City acted legally when adopting ordinance 13–4518.

TSB filed a rule 1.904(2) motion requesting clarification as to whether the court intended to dismiss TSB's takings claim. Resisting the rule 1.904(2) motion, the City argued TSB's takings claim did not meet notice-pleading requirements. The court enlarged its summary judgment ruling to find TSB failed to plead adequately a takings claim.

TSB appealed, claiming the court erred not only in entering summary judgment against it but also in failing to enter summary judgment in its favor. We transferred the case (No. 15–1373) to the court of appeals.

**D. Action Against the Board of Adjustment.** Meanwhile, the Board of Adjustment (Board) had upheld Tallman's denial of a site plan. The Board specifically denied TSB's request for a variance from ordinance 13–4518. In January 2014, TSB filed a petition for writ of certiorari against the Board, challenging the Board's refusal to approve the site plan. This case went to trial in January 2016. Approximately three months before trial, the Board unsuccessfully attempted to amend its answer to raise the statute of limitations as a defense to enforcement of the *Kempf* remand order. The district court denied the motion as untimely.

On March 28, the district court rendered its written decision in the case against the Board. It determined that TSB could not enforce the *Kempf* remand order because it was not a "successor" or "assign" within the meaning of that order. It also concluded that a "use" had been "developed or established" on the properties and that TSB's proposals involved "further development or redevelopment," which under the order would be "subject to the zoning ordinances in effect." Finally, it found that TSB's requested relief would violate public policy.

TSB appealed this ruling. Additionally, the Board cross-appealed the denial of its motion to amend its answer to raise the statute of limitations. The Board argued that the *Kempf* remand order would have been unenforceable anyway based on Iowa Code section 614.1(6). We transferred this appeal (No. 16–0988) to the court of appeals.

**E. Decisions of the Court of Appeals.** While both appeals were pending, we rendered the decision in *Dakota, Minnesota, & Eastern Railroad v. Iowa District Court*, 898 N.W.2d 127 (Iowa 2017). In *Dakota*, we held a contempt proceeding to enforce a 1977 injunction was barred by the statute of limitations set forth in Iowa Code section 614.1(6). *Id.* at 135–39.

After receiving supplemental briefs, the court of appeals rendered a single panel decision covering both appeals. In No. 15–1373, the court generally affirmed summary judgment in favor of the City on the basis of *Dakota.* However, on TSB's takings claim, the court of appeals held the district court erred in determining that the takings claim did not meet notice-pleading requirements when the City had notice of the facts giving rise to the claim and the general nature thereof. Thus, the court of appeals

reversed on that issue and remanded. In No. 16–0988, the court of appeals also affirmed the district court judgment in reliance on *Dakota*.[6]

TSB asked for further review in both cases.[7] We granted the requests and now consolidate the two appeals (No. 15-1373 and No. 16-0988) for purposes of our decision.

## II. Scope of Review.

We review orders granting summary judgment for correction of errors at law. *Johnson Propane, Heating & Cooling, Inc. v. Iowa Dep't of Transp.*, 891 N.W.2d 220, 224 (Iowa 2017). Summary judgment is appropriate if the record, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

With a certiorari proceeding, the district court finds the facts anew only to determine if there was illegality not appearing in the record made before the board. *Bontrager Auto Serv. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 494–95 (Iowa 2008). Fact-findings or issues that were before the board for decision are "reviewed under the substantial evidence standard." *Id.* at 495. "We are bound by the district court's findings if supported by substantial evidence." *Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 414 (Iowa 2003). "However, we are not bound by erroneous legal rulings that materially affect the court's decision." *Id.*

## III. Whether TSB's Claims Based on the 1987 *Kempf* Remand Order Are Barred by the Statute of Limitations.

In *Dakota,* this court concluded unanimously that when twenty years have passed from the entry of an injunction, a contempt proceeding

---

[6]Two special concurrences were filed in the court of appeals panel decision. Both concurrences expressed doubts as to whether *Dakota* was correctly decided, while recognizing the court of appeals was bound by the decision.

[7]The City also asked for further review in No. 15–1373 on the takings issue.

to enforce that injunction is barred by the statute of limitations unless the injunction has been renewed. 898 N.W.2d at 135–39. Our decision was based on the wording of Iowa Code section 614.1(6). *Id.* Upon further reflection, we believe we erred.

We begin again with the text of Iowa Code section 614.1(6). The relevant part of the statute provides,

> *Actions* may be brought within the times herein limited, respectively, *after their causes accrue*, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 6. *Judgments of courts of record.* Those founded on a judgment of a court of record, whether of this or of any other of the United States, or of the federal courts of the United States, within twenty years, except that a time period limitation shall not apply to an action to recover a judgment for child support, spousal support, or a judgment of distribution of marital assets.

Iowa Code § 614.1(6) (emphasis added).

In *Dakota*, we considered the issue of whether a 1977 judgment granting an injunction against the former owner of a railroad right-of-way was enforceable almost forty years later against a subsequent purchaser. 898 N.W.2d at 129. We held the 1977 judgment was unenforceable because of Iowa Code section 614.1(6). *Id.* at 138.

In 1977, the district court had issued an injunction against the then-owner of the railroad right-of-way. *Id.* at 132. This injunction directed the owner to reconstruct a dike designed to channel creek water under the railroad bridge and away from adjacent farmland. *Id.* Nearly forty years later, the court found a subsequent purchaser of the right-of-way in contempt for failing to reconstruct and maintain the dike. *Id.* at 134. The subsequent purchaser filed an application for interlocutory

review and alternatively a petition for certiorari, seeking review of the court's order finding contempt. *Id.* We granted certiorari review. *Id.*

In the certiorari proceeding, we stated the "[plaintiff]'s application for order to show cause filed in February 2013 was an action seeking enforcement of the judgment entered in 1977" and "was therefore an action subject to the twenty-year statute of limitations on enforcement of judgments under Iowa Code section 614.1(6)." *Id.* at 138. Overlooking the accrual language in section 614.1, we first concluded "[t]he twenty-year period commenced when the judgment was entered." *Id.* We then concluded, "Because the 1977 judgment was not renewed, it expired in 1997, well before the attempt to enforce it against [the subsequent owner] was commenced." *Id.* Thus, we held the contempt proceeding against the subsequent owner was an untimely action to enforce the 1977 judgment. *Id.* at 140.

In retrospect, instead of focusing on the language of Iowa Code 614.1(6), we should have considered the larger context of the statute, including the preceding language in section 614.1 which explicitly uses accrual terminology. *Compare* Iowa Code § 614.1 ("Actions may be brought within the times herein limited, respectively, *after their causes accrue*, and not afterwards . . . . (Emphasis added.)), *with id.* § 624.23(1) ("Judgments in the appellate or district courts of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all the defendant may subsequently acquire, for the period of ten years *from the date of the judgment.*" (Emphasis added.)). Until a cause of action accrues, the statute of limitations does not commence. *Huerta–Orosco v. Cosgrove*, 979 F. Supp. 2d 974, 979 (N.D. Iowa 2013).

Not all causes of action accrue on the date of judgment entry. The case at hand illustrates this point. The 1987 remand order prohibits the City from interfering with the development of the properties subject to the remand order. TSB sustained injury in 2013 when the City denied and the Board affirmed the denial of TSB's site plans based on ordinance 13–4518. Thus, TSB's cause of action seeking to enforce the remand order accrued or matured in 2013.

We distinguished a statute of repose from a statute of limitations in *Bob McKiness Excavating & Grading, Inc. v. Morton Buildings, Inc.*, 507 N.W.2d 405, 408–09 (Iowa 1993). We stated,

> A statute of limitations bars, after a certain period of time, the right to prosecute an accrued cause of action.
>
> By contrast, a statute of repose "terminates any right of action after a specified time has elapsed, regardless of whether or not there has as yet been an injury."
>
> A statute of repose period begins to run from the occurrence of some event other than the event of an injury that gives rise to a cause of action and, therefore, bars a cause of action before the injury occurs.
>
> Under a statute of repose, therefore, the mere passage of time can prevent a legal right from ever arising.

*Id.* at 408 (citation omitted) (quoting *Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D. 1986)). Stated differently, "a statute of limitations affects only the remedy, not the right, . . . whereas a statute of repose affects the right itself, extinguishing existing rights or preventing rights from arising." *See Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 91 (Iowa 2002) (citation omitted).

In *Bob McKiness*, we examined the language of section 614.1(11) (1991) and concluded it was a statute of repose as opposed to a statute of limitations. 507 N.W.2d at 408. Section 614.1(11) at the time provided,

> *In addition to limitations contained elsewhere in this section,* an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, *shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death.*

*Id.* at 409 (emphasis added) (quoting Iowa Code § 614.1(11) (1991)). We stated the fifteen-year period of repose commenced from the date of the defendant's act or omission alleged to have been the cause of the plaintiff's complaint. *Id.*

We further noted that "the plain language of the statute evinces a legislative policy decision to close the door after fifteen years on certain claims arising from improvements to real property." *Id.*; *accord Albrecht,* 648 N.W.2d at 91 ("[S]tatutes of repose 'reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct.'" (quoting 51 Am. Jur. 2d *Limitation of Actions* § 18, at 463 (2000))). Thus, in declining to apply the discovery rule to section 614.1(11), we rejected the argument that plaintiff's cause of action accrued in 1991 when the plaintiff first discovered the design defects of the first building. 507 N.W.2d at 409. Rather, we held the statute of repose began to run from the respective completion dates of the two buildings in 1971 and 1974. *Id.*

In *Albrecht,* we built upon our analysis in *Bob McKiness.* We emphasized section 614.1 states "[a]ctions may be brought within the times herein limited, respectively, *after their causes accrue*[,] and not afterwards, *except when otherwise specially declared.*" 648 N.W.2d at 91 (first alteration in original) (quoting Iowa Code § 614.1 (1975)). We stated the "otherwise specially declared" language applies to statutes of repose. *Id.* at 92. We held section 614.1(2A)(*a*) is a statute of repose in which the

limitations period commenced from the date the aggrieved party first purchased the product or installed it for use. *Id.*

We should have concluded in *Dakota* that Iowa section 614.1(6) is a statute of limitations, not a statute of repose. This section provides that actions run from the accrual of the aggrieved party's claim, not necessarily the date of judgment entry. *See Weiser v. McDowell*, 93 Iowa 772, 777, 61 N.W. 1094, 1096 (1895) ("[P]laintiff's cause of action is not barred until twenty years from the time at which the action could have been commenced . . . .").

Of course, in some instances those dates are one and the same. An obligation to pay money typically arises when the money judgment is entered. Therefore, a cause of action to enforce a money judgment (including an obligation to pay money within an equitable decree) usually arises when the judgment is entered. *See Miller v. Rosebrook*, 136 Iowa 158, 164, 113 N.W. 771, 773 (1907) (deciding that with respect to a money judgment, "the statutory period within which an action may be brought on such judgment commences to run from the date of the entry thereof by the clerk of the district court, and extend[s] for twenty years").[8] That is why section 614.1(6) was amended in 1997 to expressly exempt "an action to recover a judgment for child support, spousal support, or a judgment of distribution of marital assets" from the twenty-year bar. *See* 1997 Iowa Acts ch. 175, § 235; *see also State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 247 (Iowa 1998) (finding that "collection of [child support] payments due more than twenty years prior to July 1, 1997, [was] barred by the statute of limitations").

---

[8]This would not be true if the judgment provided for a deferred payment.

*Dakota* was also inconsistent with *Bear v. Iowa District Court*, where we said that permanent injunctions are "unlimited in respect of time." 540 N.W.2d 439, 441 (Iowa 1995). We added, "The mere passage of time . . . does not invalidate a permanent injunction." *Id.* As we pointed out in *Dakota*, the results in the two cases can be reconciled. *See* 898 N.W.2d at 139. Yet the reasoning in the two cases cannot be.[9]

The legislature has used the appropriate language when it intends to regulate the duration of judgments as opposed to when "[a]ctions may

---

[9]There is another potential reason why we may have erred in *Dakota*. Historically, an action founded on a judgment as used in Iowa Code section 614.1(6) and its predecessors referred to an action on a money judgment. Thus, in *Morrison v. Springfield Engine & Thresher Co.*, 84 Iowa 637, 640, 51 N.W. 183, 184 (1892), we found that an action to enforce a judgment requiring the return of a thresher or a payment of its value in money was not time-barred by the predecessor to section 614.1(6). We explained,

> [T]he action in this case is not really upon a judgment. The order in reference to the thresher is conditional. It provides for the return of the machine or the payment of the value of it, and it fixes the value. It is not in such condition that an execution could be issued thereon to collect the money. It was in the alternative.

*Id.*

It is true that *Kramer v. Rebman*, 9 Iowa 114, 118 (1859), which we cited in *Dakota*, indicates in dictum that "judgment" as used in section 614.1(6)'s predecessor includes both judgments at law and judgments at equity. But *Kramer* doesn't address what constitutes an action "founded on a judgment" and whether that term encompasses proceedings to enforce purely equitable provisions in a decree. *See* Iowa Code § 614.1(6) (2013).

*Dakota* also did not discuss Iowa Code section 614.3, which provides,

> No action shall be brought upon any judgment against a defendant therein, rendered in any court of record of this state, within nine years after the rendition thereof, without leave of the court for good cause shown
> . . . .

Iowa Code § 614.3. If *Dakota* were correct, then no contempt action could be brought to enforce an injunction during the first nine years after its entry—unless an action "brought upon any judgment" and an action "founded . . . on a judgment" were two different things. That is troubling.

We do not reach a definitive conclusion on these points. For today, we hold only that a proceeding to enforce an injunction cannot be barred by the statute of limitations in Iowa Code section 614.1(6) if it was brought within twenty years of the accrual of the cause of action, which in a proper case may be when the violation of the injunction first occurred.

be brought . . . after their causes accrue" to enforce judgments. Iowa Code § 614.1 (2013); *see Exceptional Persons, Inc. v. Iowa Dep't of Human Servs.*, 878 N.W.2d 247, 251 (Iowa 2016) ("[W]e may consider those things the legislature said in one provision, but not in another."). Consider chapter 615, which the legislature titled as "Limitations on Judgments." Iowa Code ch. 615. Section 615.1 plainly provides that certain judgments related to real estate expire after two years. *Id.* § 615.1 ("After the expiration of a period of two years from the date of entry of judgment, . . . a judgment entered in any of the following actions shall be null and void . . . ." ). In yet another example, section 664A.5 specifically limits the duration of a permanent no-contact order to "five years from the date the judgment is entered or the deferred judgment is granted." *Id.* § 664A.5. From these sections, it appears the legislature knew exactly how to limit the duration of judgments. However, the legislature chose not to do so in section 614.1(6).

In sum, we overrule *Dakota* and hold that the limitations period in Iowa Code section 614.1(6) runs from the date when the cause of action accrues, which in the case of an injunction may be the date when the violation of the injunction occurs. This does not mean that all injunctions are permanent. *Dakota* may have reached the correct result on its facts because it appears the relevant portions of the injunction were not permanent. They required specific action at the time—"continuing to allow the flowage of Whiskey Creek upon plaintiffs' land" and "reconstruct[ing] the collapsed dike in order to channel the Creek under Bridge 110"—not forever. *Dakota,* 898 N.W.2d at 132. Thus, contempt was improper not because the statute of limitations for contempt had run, but because the underlying provisions that were the basis for contempt had expired.

We conclude that proceedings in these cases were not barred by Iowa Code section 614.1(6). TSB alleges that the City's adoption of ordinance of 13–4518 and the Board's denial of a variance for the amended site plan both violated the *Kempf* remand order. Those two actions occurred in 2013. Thus, TSB's cause of action to enforce the *Kempf* remand order accrued or matured in 2013.

**IV. Whether the *Kempf* Remand Order Allows TSB to Develop the Properties with Apartments.**

We now address two arguments. First, does the City's passage of ordinance 13–4518 violate the *Kempf* remand order? Second, does the *Kempf* remand order prohibit the City from enforcing ordinance 13–4518 so as to interfere with TSB's alleged development rights? Otherwise stated, does it allow TSB to develop the properties despite ordinance 13–4518?

**A. Did the City's Passage of Ordinance 13–4518 Violate the *Kempf* Remand Order?** Zoning decisions are an exercise of police powers the state delegates to municipalities. *Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 742 (Iowa 1969). The City has statutory authority to pass zoning laws "[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1(1).

"A zoning ordinance, including any amendments to it, carries a strong presumption of validity." *Neuzil v. City of Iowa City*, 451 N.W.2d 159, 163 (Iowa 1990); *see also Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 43 (Iowa 2016) ("Zoning regulations carry a strong presumption of validity."). The challenger must rebut and overcome the strong presumption that the rezoning is valid. *See Shriver v. City of Okoboji*, 567 N.W.2d 397, 401 (Iowa 1997). The challenger "must show the ordinance is unreasonable, arbitrary,

capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare." *Id.*

"If the reasonableness of a zoning ordinance is fairly debatable, we will not substitute our judgment for that of the legislative body." *Molo Oil Co. v. City of Dubuque*, 692 N.W.2d 686, 691 (Iowa 2005); *see also Residential & Agric. Advisory Comm.*, 888 N.W.2d at 43.

If an ordinance "has any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values," it is valid. *Neuzil*, 451 N.W.2d at 164. We apply this test by primarily considering the ordinance's general purpose and not the hardship it may impose in an individual case. *Id.* "We do not focus on individual hardships because property owners in the area affected by a zoning ordinance, as well as adjacent landowners, have no vested right to the continuation of the current zoning." *Shriver*, 567 N.W.2d at 401. We will therefore not strike down an ordinance for the sole reason that the ordinance adversely affects a particular property owner. *Id.* Zoning is dynamic and changing, with "any existing restrictions being always subject to reasonable revisions [in light of] changing community conditions and needs as they appear." *Anderson*, 168 N.W.2d at 743.

In appeal No. 15–1373, TSB argues that the City's passage of ordinance 13–4518 was unlawful. Yet in its resistance to the City's motion for summary judgment below, TSB conceded that "the injunction in the [r]emand [o]rder does not specifically state that the City may not rezone the [p]ropert[ies]." Moreover, TSB has stated "[it] does not ask that the City be permanently enjoined from rezoning the [p]ropert[ies]."

Nothing in the language of our *Kempf* decision or the district court's remand order prevents the City from rezoning the properties under scrutiny. In fact, we did not void the rezoning ordinance in *Kempf* but

rather held the ordinance was not applicable to Kempf's development plans. *See* 402 N.W.2d at 401 (reversing the district court's ruling to the extent it voided the 1978 zoning ordinance).

On appeal, TSB admits "[t]his case is not about a challenge to the City's power to rezone property." So what exactly is TSB arguing? TSB reframes the issue as whether the City intentionally violated the remand order by passing ordinance 13–4518. In other words, TSB is not alleging ordinance 13–4518 is illegal on the ground that *Kempf* and the remand order precluded rezoning of the properties. Instead, TSB is claiming ordinance 13–4518 is illegal because the City's purpose was to interfere with TSB's alleged development rights.

When a zoning authority adopts a new zoning regulation designed to frustrate a particular applicant's plans for development, it can be discerned that an improper purpose exists. *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 169 (Iowa 2009).

Yet we find no improper purpose on the part of the City in passing ordinance 13–4518. Before TSB submitted its site plans in 2013, the City was already contemplating zoning changes in 2008, at which time the City adopted a central district plan. According to this plan, TSB's properties lie within an "area [that] has the greatest diversity of housing types and the widest range of zoning designations, from medium density single-family to high density multi-family." The plan states this mix "has been an ongoing challenge to maintain a balance between the different housing types and mix of residents within [the area]." The plan cites several reasons: absentee landlords, a large number of inexperienced young renters, problems with property maintenance, loud and disorderly conduct, yard upkeep, and snow removal.

In 2012, the City amended its comprehensive zoning plan to designate the area as single family and duplex residential. The resolution amending the comprehensive plan stated,

> City policies, including the [c]omprehensive and [s]trategic plan, have changed considerably in the last 50 years, and now contain policies promoting neighborhood stabilization rather than high-density redevelopment, which has proven to have a destabilizing effect on single-family residential neighborhoods.

The resolution noted that the central district plan seeks "to achieve a healthier balance of rental and owner-occupied housing in the district's older neighborhoods to promote long-term investment, affordable housing opportunities, and preservation of historic homes and neighborhoods."

After considering the proposed rezoning three times, the City approved ordinance 13–4518 a year later. This ordinance incorporates the same goals and justifications as the 2012 amendment to the comprehensive plan.

Reviewing this sequence of events, we cannot find the City adopted the ordinance in bad faith or to block TSB from developing the relevant properties. The City sought to ensure compatibility of future development and redevelopment with the surrounding neighborhoods and encourage stabilization of the neighborhood. The chronology of the passage of ordinance 13–4518 tends to negate any arguments that the City was engaged in spot zoning. *See id.* at 169 n.3 ("Unlike [in] situations where bad faith [is] found when the governing body [seeks] to change the rules in response to a particular request, the result may be different where a zoning change is already being contemplated before the particular request is made."). Accordingly, we hold the district court did not err in granting summary judgment to the City in No. 15–1373 and determining that ordinance 13–4518 was lawful.

**B. Does the *Kempf* Remand Order Prohibit the City from Enforcing Ordinance 13–4518 as to the Properties TSB Seeks to Develop?** We now address whether the *Kempf* remand order precludes the application of ordinance 13–4518 to TSB's amended site plan, such that TSB should have been granted a variance. This issue is raised in No. 16–0988—the case against the Board. The district court found that TSB did not have rights to proceed with the apartment project under the *Kempf* remand order.

We interpret court decrees like any other written instrument. *Waters v. State,* 784 N.W.2d 24, 28 (Iowa 2010). In construing court decrees, the determining factor is the intent of the court as gathered from all parts of the judgment. *Id.* If possible, we strive to effectuate every word "to give the judgment as a whole a consistent, effective[,] and reasonable meaning." *In re Marriage of Lawson*, 409 N.W.2d 181, 182–83 (Iowa 1987). Moreover, we seek to give force to those matters that are clearly implied, as well as expressed. *Rinehart v. State*, 234 N.W.2d 649, 656 (Iowa 1975). We resort to the pleadings and other proceedings if the meaning of the decree is ambiguous. *Waters*, 784 N.W.2d at 28.

1. *Owners, successors, and assigns.* TSB contends the district court erred in concluding that it did not qualify as a "successor[] and assign[]" to Kempf.

An "assign," otherwise known as "assignee," is not the same as a "successor." *See Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 899 (Iowa 2014). An assignment occurs when an assignor transfers to its assignee "the whole of any property or right in the property" such that "the assignee assumes the rights, remedies, and benefits of the assignor," and "also takes the property subject to all defenses to which the assignor is subject." *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 533 (Iowa 1995).

We have stated that

> [assign] does not mean just a single person, but also comprehends a line or succession of persons. It is often written "assignees." An "assignment" has been defined as "a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." . . . "The word 'assigns' is a term of well-known signification, *comprehending all those who take immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law* . . . .

*Reichard v. Chi., B. & Q. R.R.*, 231 Iowa 563, 583, 1 N.W.2d 721, 733 (1942) (citation omitted).

The district court found that TSB was not a successor or assign because (1) Kempf did not sell the lots directly to TSB and (2) the lots were sold piecemeal and not as a single package. The first point does not matter because assign includes "a line or succession of persons" and encompasses "all those who take immediately or *remotely* from or under the assignor, whether by conveyance, devise, descent, or act of law." *Id.* (emphasis omitted). The second point does not matter because the lots themselves were not subdivided, and the *Kempf* remand order applied lot by lot. Notably, the order begins by using plural nouns. It refers to "the owner or owners" of the "properties," i.e., the lots, as well as "their successors and assigns." Then, it continues,

> Once a use has been developed or established on *any* of the above-described properties, further development or redevelopment of *that property* shall be subject to the zoning ordinances in effect at the time such further development or redevelopment is undertaken.

(Emphasis added.) Thus, development rights are provided for each lot. In any event, TSB now owns the whole Kempf tract: lots 8–10 and 49–51. This is not a case like *Ross v. First Savings Bank of Arlington*, which involved loan participation agreements. *See* 675 N.W.2d 812 (Iowa 2004). Unlike the lead bank in *Ross*, which sold shares in a pool of loans, *id.* at

817, Kempf transferred and TSB eventually acquired all the rights to each lot. TSB is an assignee within the contemplation of the 1987 remand order.

The Board relies on *Sun Valley Iowa Lake Ass'n v. Anderson* to argue that TSB is not a *successor* to Kempf. *See* 551 N.W.2d 621 (Iowa 1996). We need not resolve whether TSB is a successor because we have already determined that it is an assign. In any event, *Sun Valley* does not support the Board's position. In that case, we found that the entity that had purchased property from the developer was a "successor developer" within the meaning of a covenant document, and the entity's two shareholders were not. *Id.* at 639–40. We quoted a Texas case for the proposition that the exact meaning of the word "successor" "must depend largely on the kind and character of the contract, its purposes and circumstances, and the context." *Id.* at 640 (quoting *Enchanted Estates Cmty. Ass'n v. Timberlake Improvement Dist.,* 832 S.W.2d 800, 802 (Tex. App. 1992)). We quoted further from the same case that "[t]he term 'successor' has also been defined as 'one who takes the place that another has left, and sustains the like part or character.'" *Id.* (emphasis omitted). We found that the new developer, not its shareholders, "took the place" of the previous developer and "sustain[ed] the like part or character.'" *Id.* (alteration in original).

Here TSB "took the place" that Kempf "left" and is seeking to "sustain[] the like part or character." *See id.* TSB's amended site plan calls for apartments to be built on lots 10, 49, and 51. At the time we decided *Kempf*, Kempf's plan based on the record of that case was to develop four more apartment buildings. 402 N.W.2d at 395. Kempf built one apartment building following the remand order. TSB now seeks to pick up where Kempf left off by erecting three more apartment buildings.

2. *Whether a use has been developed or established on the properties.* TSB next contends the district court erred in concluding that the type of "use" contemplated in *Kempf* and the remand order "had been developed or established" on the relevant lots.

The remand order not only benefits "successors and assigns" to Kempf, it also permits the development to occur with "multiple dwellings" (apartments) in general and not specifically Kempf's planned four apartment buildings.

The question then is whether, per the remand order, "a use has been developed or established on any of the above-described properties." As we have already noted, the remand order takes a micro approach as opposed to a macro approach. Specifically, the remand order dictates that "[o]nce a use has been developed or established on *any of the above-described properties*, further development or redevelopment of *that property* shall be subject to the zoning ordinances in effect at the time" such action is taken. (Emphasis added.)

At this point, TSB seeks to build apartment buildings only on lots 10, 49, and 51. No building has ever been erected on those lots. Following remand, Kempf constructed the twelve-unit apartment development on a portion of lot 50 that is located at 906 North Dodge Street and granted the local energy company an electrical easement running through lots 49 and 50 to provide utilities to the new apartment development. The grant of an electrical easement on lot 49 is irrelevant because a "use" contemplates the construction of a building.

The Board also urges that TSB's plans involve "further development or redevelopment" of the lots in question. We disagree. A use has not been established on lots 10, 49, and 51. Thus, TSB's construction of

apartments on these lots would not amount to "further development or redevelopment."

Developing apartments on lots 10, 49, and 51 necessarily entails concomitant burdens, such as relocating a sewer line or moving an easement to provide utilities to the new buildings. TSB would have to move utility lines and renegotiate the electrical easement Kempf had granted to the local energy company. However, Tallman herself testified that moving water lines, sewer lines, and utility lines do not constitute a change in the use of the property. Rather, according to Tallman, the City considers an actual change in use of the property, such as from single-family dwelling units to multifamily dwelling units, to be a change in land use. Based on Tallman's testimony, we decline to categorize these concomitant burdens as "further development or redevelopment."

TSB intends to demolish the office building on lots 8 and 9 and put in a larger parking lot, but these lots are not subject to the remand order. We need not address this proposed demolition further.

Accordingly, we conclude that TSB can build apartment buildings on lots 10, 49, and 51 subject to the remand order.[10]

**V. Conclusion.**

For the foregoing reasons, we overrule *Dakota* and vacate the decisions of the court of appeals. We affirm the district court's grant of summary judgment to the City in No. 15–1373. We reverse the district

---

[10]The district court also found that enforcement of the 1987 decree would violate public policy because "the City has changed in the nearly thirty years since Mr. Kempf last was involved with the property, and there have been challenges to regulating standards applicable to the various neighborhoods in the City." However, the City has not sought to modify that order based on changed conditions.

court's ruling in favor of the Board in No. 16–0988 and remand for further proceedings consistent with this opinion.[11]

**DECISIONS OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT IN NO. 15–1373 AFFIRMED; DISTRICT COURT JUDGMENT IN NO. 16–0988 REVERSED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Hecht and Wiggins, JJ., who take no part.

---

[11]In No. 15–1373, the court of appeals reversed and remanded the dismissal of TSB's takings claim. We determine that claim is now moot in light of our overall disposition of this appeal.