**IN THE COURT OF APPEALS OF IOWA**

No. 24-1507
Filed December 4, 2024

**IN THE INTEREST OF A.G., E.G., T.G., C.O., C.P., I.P., I.P., S.P., and T.P.,
Minor Children,**

**B.E., Mother,**
        Appellant,

**D.P., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, Richelle
Mahaffey, Judge.

A mother and father separately appeal the adjudicatory and disposition
orders in a children-in-need-of-assistance proceeding.  **AFFIRMED ON BOTH
APPEALS.**

Debra George of Griffing & George Law Firm PLC, Centerville, for appellant
mother.

Jonathan Willier, Centerville, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and
guardian ad litem for minor children.

Considered by Langholz, P.J., Sandy, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**DOYLE, Senior Judge.**

A mother and father separately appeal the adjudicatory and disposition orders in a children-in-need-of-assistance (CINA) proceeding. Each parent challenges the grounds for the CINA adjudication. The mother also challenges the determination that the State made reasonable efforts to prevent the children's removal. Because substantial evidence supports the grounds for the CINA adjudication and removal, we affirm.

**I. Background Facts and Proceedings.**

The CINA proceedings involve nine children ranging from one to sixteen years old. B.E. is the mother of all nine children. D.P. is the father of the five youngest children.[1]

In February 2024, the Iowa Department of Health and Human Services (HHS) received reports about domestic violence in the home and the mother's misuse of prescription medication. There were allegations that the mother assaulted the father in front of the children and threw a full can of pop at her three-year-old child's head. There were also concerns about the mother's mental health with reports that she exhibited paranoid and erratic behavior. A child abuse assessment was founded against the mother for denial of critical care for failing to provide proper supervision.

The HHS has been involved with the family since at least 2015 based on concerns about domestic violence, mental health, and substance use. At the adjudicatory hearing, a case manager who has been involved with the family on

---

[1] The fathers of the other four children are not involved in this appeal.

and off since that time testified that the mother and father have a history of violating no-contact orders. She described the cyclical pattern of behavior she witnessed in their relationship:

> They'll do fine for a while, and then there will be small things that cause stress in their relationship.
> . . . They don't come running to us when there's smaller problems and then those problems get bigger, and then we have an explosion, which is usually domestic violence or positive drug test or behaviors that make it look like there's current drug use that we have to follow up on.
> Then there's people feeling guilty about what happened, and things cycle again. Then they're doing well for a while, and their relationship starts to have problems again. All of that impacts both of their mental health, and it could be that, at times, their mental health impacts their relationship.

In May, the juvenile court adjudicated the children as CINA. It did not remove them from either the parents' custody or care. But things took a turn for the worse in July. The mother continued to misuse prescription medication, and the children reported the mother breaking items in the home and throwing things. There were also concerns about black mold in the home and prescription medication and dangerous objects left within the children's reach. Although HHS implemented safety plans, the mother did not comply with them. By August, she refused to agree to a safety plan.

The State petitioned to remove the children from the parents' legal and physical custody. The juvenile court granted the petition, finding that "removal is necessary to avoid imminent risk to the children's life or health," continuing in the home was contrary to the children's welfare, and further efforts would not prevent removal. In its September disposition order, the juvenile court confirmed the children's CINA adjudication and continued removal.

## II. Scope of Review.

We review CINA proceedings de novo. *See In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). "We review 'both the facts and the law, and we adjudicate rights anew.'" *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) (citations omitted). "[W]e give weight to the juvenile court's fact-findings, especially when considering the credibility of witnesses, but those findings do not bind us." *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005). "As in all juvenile proceedings, our fundamental concern is the best interests of the child." *K.N.*, 625 N.W.2d at 733.

## III. Adjudicatory Grounds.

"The underlying grounds of adjudication in [CINA] cases have important legal implications beyond the adjudication." *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). The State petitioned to adjudicate the children as CINA under Iowa Code section 232.96A(3)(b) and (14) (2024). The CINA order's findings of fact state, "There is clear and convincing evidence to support the allegations of the Petition(s) filed, and the children are adjudicated in need of assistance pursuant to Iowa Code Sections 232.96A(3)(b), and (14) and the aid of the Court is required." But in the decretal portion of the order, the juvenile court only states the children are adjudicated as CINA without citing a specific code provision for the adjudication. The mother argues that the juvenile court erred by failing to identify the provisions for the adjudication in the decretal order.

"Though the judgment may contain findings of fact and conclusions of law, it is only the decretal portion of the [order] that constitutes an adjudication." *Wolf v. Murrane*, 199 N.W.2d 90, 95 (Iowa 1972). The decretal order "must be certain and in intelligible form so the parties understand the adjudication." *In re Est. of*

*Woodroffe*, 742 N.W.2d 94, 107 (Iowa 2007) (citation omitted). An indefinite and uncertain decretal order may be void. *See id.* The question is whether failing to cite the statutory provisions under which the court was adjudicating the children as CINA renders the court's order so indefinite and uncertain as to be void.

We interpret the court's order as we interpret other written instruments. *See TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 16 (Iowa 2018). We determine the court's intent from all parts of the order, giving every word a consistent, effective, and reasonable meaning. *See id.* "Moreover, we seek to give force to those matters that are clearly implied, as well as expressed." *Id.* We can look at the pleadings and other proceedings to determine the meaning when the order is ambiguous. *See id.*

Following the rules of construction and interpretation, it is clear the juvenile court adjudicated the children as CINA under Iowa Code section 232.96A(3)(b) and (14). The State petitioned for a CINA adjudication on those grounds, and the court's fact findings state clear and convincing evidence supported granting the State's petition as to both. Although the juvenile court failed to restate the code section in the decretal order, its intent to adjudicate the children as CINA under section 232.96A(3)(b) and (14) is clearly implied.

Both the mother and the father contend there was not clear and convincing evidence supporting the CINA adjudication on both grounds. The State bears the burden of proving the grounds for adjudication by clear and convincing evidence. *In re N.C.*, 952 N.W.2d 151, 153 (Iowa 2020). Clear and convincing evidence exists when there is "no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

We begin with the CINA adjudication under section 232.96A(3)(b). The juvenile court may adjudicate children as CINA under section 232.96A(3)(b) if they have suffered or are imminently likely to suffer harmful effects because of a parent's failure to exercise a reasonable degree of care in supervising the children. "Harmful effects" means "harm to a child's physical, mental, or social well-being" or an imminently likelihood that such harm will occur. *See In re J.S.*, 846 N.W.2d 36, 41–42 (Iowa 2014).

Clear and convincing evidence supports the CINA adjudication under section 232.96A(3)(b). The children are at risk of harm from dangerous items like razor blades and prescription medications that are accessible in the home. Witnessing domestic violence between parents can cause children mental harm. It also exposes the children to imminent physical harm as they are likely to be injured during the melee. The mother's failure to address her substance use and mental health also places the children at risk of harm.[2] The mother has exhibited erratic behavior, breaking and throwing objects around the home. On one occasion, the mother threw a full can of beverage at her three-year-old child's

---

[2] In considering whether termination of parental rights serves a child's best interests, we often note that the parents' past performance "may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). The mother argues the juvenile court erred by giving weight to the parents' history of domestic violence, substance use, and mental-health issues in adjudicating the children as CINA because a prior CINA proceeding should not be grounds for a new CINA adjudication.

The juvenile court adjudicated the children as CINA based on recent events rather than past acts. But "[w]hat's past is prologue." *In re P.M.A.O.*, No. 11-0907, 2011 WL 3480975, at *3 (Iowa Ct. App. Aug. 10, 2011) (alteration in original) (quoting William Shakespeare, *The Tempest* act 2, sc. 1, l. 253–54). The juvenile court did not act improperly by considering relevant history to provide context for the parents' recent acts.

head. The mother counters that there were no visible marks on the child. Although visible marks are one indication of physical abuse, they are not required for a CINA adjudication under section 232.96A(3)(b); the act of throwing an object at a toddler's head endangers the child's physical and mental well-being even if no contact is made.

We turn then to the CINA adjudication under section 232.96A(14). The juvenile court may adjudicate children as CINA under section 232.96A(14) if they are not receiving adequate care or are imminently likely not to receive adequate care because of a parent's mental incapacity, mental condition, imprisonment, or substance use. The mother argues that the State failed to identify any mental-health diagnosis to support the CINA adjudication. That failure is due to the mother's lack of cooperation with HHS as she has not allowed access to her mental-health records or obtained a mental-health assessment. Regardless, a mental-health diagnosis is not required for a CINA adjudication under section 232.96A(14).

Clear and convincing evidence supports the CINA adjudication under section 232.96A(14). The mother has a long history of substance use, and she exhibited paranoid and erratic behavior in the months leading up to the CINA adjudication. As a result, the children are imminently likely not to receive adequate care based on the mother's mental condition, substance use, or both. The State's failure to identify the exact cause is irrelevant, especially when doing so requires the mother's cooperation.

**IV. Reasonable Efforts.**

The mother also contests the reasonable efforts made by the State to avoid removing the children from her custody. Her complaint centers on one line in the CINA disposition order, noting that neither parent engaged in any domestic violence services since the removal hearing. The mother complains that the HHS never recommended or provided those services, nor were they ordered by the juvenile court.

The juvenile court removed the children from the parents' custody after the mother violated the order preventing her from having contact with the father and refused to agree to a safety plan. One month later, the juvenile court entered a CINA disposition order in which it confirmed the children as CINA and continued their removal based on the parents' failure to engage in or respond to services. In its findings, the court noted that neither parent had engaged in any domestic violence services since the removal hearing.

The evidence supports finding that the children's removal from the mother's custody was necessary to ensure their continued safety. It also supports finding their continued removal is necessary in light of the mother's overall lack of engagement with the services offered by HHS. As the juvenile court found, the mother

> needs to start taking the recommendations of HHS seriously, and cooperating with services. Continuing to deny that services are needed flies in the face of the evidence that numerous, serious safety concerns persist. Progress toward reunification will be stymied until the parents acknowledge their need for mental health treatment, substance abuse treatment, domestic violence services, and safe and stable housing.

We find the mother's argument unavailing.

### V. Best Interests.

The mother argues the juvenile court failed to weigh that the best interests of the children were to remain with her. As the juvenile court noted, "[p]rogress toward reunification will be stymied until the parents acknowledge their need for mental health treatment, substance abuse treatment, domestic violence services, and safe and stable housing." Until she achieves progress in these areas, we cannot find that reunification is in the children's best interests. *See In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (explaining that the children's safety and their need for a permanent home are the "defining elements" in determining best interests).

Because substantial evidence shows that the children's initial and continued removal is necessary to ensure their safety, we affirm.

**AFFIRMED ON BOTH APPEALS.**