# In the Iowa Supreme Court

No. 23–1617

Submitted February 17, 2025—Filed June 13, 2025

**Estate of Sharon Kahn,** by administrator **Suzanne L. Rowe,** and **Estate of Vicki Hodges,** by coadministrators **Suzanne L. Rowe** and **Sierra D. Reyes,**

Appellants,

vs.

**City of Clermont, Fayette County Conservation Board, Fayette County,** and **State of Iowa,**

Appellees.

Appeal from the Iowa District Court for Fayette County, Laura Parrish, judge.

Two estates appeal the dismissal of their lawsuit against the State and several municipalities after two women drowned after going over a low-head dam on a public water trail. **Reversed and Remanded.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

J. Russell Hixson (argued) of Hixson & Brown, P.C., West Des Moines; Theresa B. Hatch and Nicholas C. Rowley, Trial Lawyers for Justice, Decorah; and Chayce Glienke, Trial Lawyers for Justice, West Des Moines, for appellants.

Brenna Bird, Attorney General; Eric Wessan, Solicitor General; Patrick C. Valencia, Deputy Solicitor General; Alexa Den Herder, Assistant Solicitor General (until withdrawal); and Ian Jongewaard (argued) and Adam J. Kenworthy, Assistant Attorneys General, for appellee State of Iowa.

Carlton G. Salmons and Joseph G. Gamble of Duncan Green, P.C., Des Moines, and Kent A. Gummert and Nicholas P. Moreland of Lederer Weston Craig PLC, West Des Moines, for appellees Fayette County and Fayette County Conservation Board.

Zachary D. Clausen (argued) and Timothy A. Clausen of Klass Law Firm, L.L.P., Sioux City, for appellee City of Clermont.

**McDermott, Justice.**

A mother and daughter drowned while floating on innertubes together on the Turkey River after they went over a low-head dam. Their estates sued the State of Iowa, Fayette County, the Fayette County Conservation Board, and the City of Clermont, alleging negligence and premises liability involving the failure to maintain warnings along the river about the dam. The defendants moved to dismiss the claims, and the district court dismissed all the claims. In this appeal, we consider whether the district court properly dismissed the claims under the public-duty doctrine, sovereign immunity, discretionary function immunity, and the qualified immunity protections in the state and municipal tort claims acts.

**I. Background.**

**A. Factual Background.** Because this case involves an appeal of a motion to dismiss, we accept the facts as alleged in the petition as true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010).

The Turkey River runs through about a half-dozen counties in Iowa's northeastern corner before flowing into the Mississippi River. On the Turkey River near the city of Clermont in Fayette County sits a low-head dam. A low-head dam is a man-made structure built across a river just below the water's surface. Water flows continuously over its edge, falling a short distance (in this case, about five feet) to the dam's base. Strong currents and recirculating water created by the falling water at the base can trap boats and people, pulling them underwater. Low-head dams are thus notoriously dangerous—so much so that the State has referred to them as "drowning machines" and has instituted a program providing funding to low-head dam owners to modify or remove them. Clermont has received funding from the State to address the danger from its low-head dam.

Fayette County, the Fayette County Conservation Board, and the State partnered on a project to develop a water trail system on the river called the Turkey River Water Trail. A water trail is a point-to-point travel system on a body of water with multiple access points and a recommended route connecting those points. The low-head dam in Clermont was on the Turkey River Water Trail's path. Despite the danger of the low-head dam, the Turkey River Water Trail was promoted by the State of Iowa, Fayette County, and Clermont. The State promoted the trail on the Iowa Department of Natural Resources website and at events such as the Iowa State Fair. Fayette County and Clermont engaged in similar promotion.

In June 2020, Sharon Kahn and her daughter Vicki Hodges went on an innertube floating trip on the Turkey River Water Trail. They entered the river at access point #71 in Clermont and planned to exit downriver around access point #62. But because they had never been on the Turkey River before, they did not know that they would reach the low-head dam before their exit point.

Along their path, five signs had been posted warning river users of the upcoming dam. But four of the five signs were so overgrown with vegetation that users could not see them from the river. An emergency portage—a place to get off the river for people to walk by land to another access point downstream from the dam—had also been created near the dam, but it too was so overgrown and in disrepair that it was inaccessible. There were no emergency devices on the river itself, such as buoys or safety cables, that users could grab onto to avoid going over the dam. Unaware of the danger ahead, Kahn and Hodges continued down the river until they spilled over the dam. At the base of the dam, each got caught in the recirculating current. Both drowned.

**B. Procedural Background.** Their estates sued the State of Iowa, Fayette County and the Fayette County Conservation Board (together, "the County"), and the City of Clermont. They brought negligence claims against each defendant, along with premises liability claims against the State and Clermont.

The City filed an answer denying most of the allegations and raising several affirmative defenses. The County, instead of filing an answer, filed a pre-answer motion to dismiss asserting qualified immunity, recreational immunity, protection under the public-duty doctrine, and that the petition failed to meet a required heightened pleading standard. After a hearing on the County's motion, the State also moved to dismiss, arguing that qualified immunity, sovereign immunity, discretionary function immunity, and the public-duty doctrine barred the claims against it. At this point, the City filed a motion for judgment on the pleadings, arguing that the petition failed to plausibly plead a viable claim because recreational immunity and the public-duty doctrine applied. The estates resisted all three motions.

The district court granted all three motions and dismissed the case in its entirety. In its ruling addressing the City's and County's motion, the district court concluded that the claims were barred by the public-duty doctrine and that the petition failed to meet the heightened pleading requirements in Iowa Code § 670.4A (2022). In a separate ruling addressing the State's motion to dismiss, the district court likewise dismissed all claims against the State, but it did not articulate specific grounds, simply referring generally to "those reasons set forth in the [State's] motion." The State's motion argued that the estates' claims required dismissal based on the qualified immunity provisions of Iowa Code § 669.14A, the public-duty doctrine, and sovereign immunity.

**II. Analysis.**

We review rulings on a motion to dismiss, *see Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014), and a motion for judgment on the pleadings, *see Farrell ex rel. Est. of Farrell*, 974 N.W.2d 132, 137 (Iowa 2022), on a corrections-of-errors-at-law standard.

**A. Qualified Immunity and the Heightened Pleading Requirement.** The defendants argue that the estates' tort claims must meet the heightened pleading standards in Iowa Code § 670.4A (the Municipal Tort Claims Act) and § 669.14A (the State Tort Claims Act). Each tort claim statute generally subjects the state or a municipality to liability for its torts and those of its officers and employees acting within the scope of their employment or duties. Iowa Code § 669.5(2)(*a*); *id.* § 670.2(1).

Recent amendments to the statutes codified substantive qualified immunity protections that made the state and municipalities immune from liability for certain claims. 2021 Iowa Acts ch. 183, §§ 12, 14 (codified at Iowa Code § 669.14A(2) and § 670.4A(2) (2022)). Both amendments also introduced identical heightened pleading requirements for certain claims. *Id.* (codified at Iowa Code § 669.14A(3) and § 670.4A(3) (2022)). The remedy for failing to meet the heightened pleading requirements is severe: "Failure to plead a plausible violation or failure to plead that the law was clearly established at the time of the alleged violation shall result in dismissal with prejudice." *Id.* The district court held that these heightened pleading requirements applied and that the estates' petition failed to meet them.

But in our recent decision in *1000 Friends of Iowa v. Polk County Board of Supervisors*, we reasoned that the substantive qualified immunity protections and the associated pleading standard were "inextricably intertwined" and thus

must be read together. 19 N.W.3d 290, 296 (Iowa 2025) (quoting *Nahas v. Polk County*, 991 N.W.2d 770, 80 (Iowa 2023)). As a result, if the substantive immunity does not apply, then neither does the heightened pleading standard. *Id.*

And shortly after, in *Doe v. Western Dubuque Community School District*, ___ N.W.3d ___, 2025 WL 1349436 (Iowa May 9, 2025), we concluded that the substantive qualified immunity protections in § 670.4A applied only to alleged claims involving violations of *statutory or constitutional* rights, not to common law tort claims. *Id.* at ___, 2025 WL 1349436 at *5. Although *Doe* addressed only § 670.4A, considering that the qualified immunity protections in § 669.14A were enacted at the same time as, and are identical to, those in § 670.4A, our holding in *Doe* that substantive qualified immunity applies only to statutory or constitutional claims and not to common law claims applies equally to § 669.14A. *See id.*

In this case, the petition alleges only the common law tort claims of negligence and premises liability. Because the petition does not allege violations of any statutory or constitutional rights, the substantive qualified immunity protections do not apply, and in turn, the related heightened pleading requirements in § 669.14A and § 670.4A do not apply either. We thus apply our ordinary notice pleading standards.

Under those standards, a plaintiff's petition survives a motion to dismiss if it simply contains factual allegations that give the defendant "fair notice" of the claim so the defendant can adequately respond to the petition. *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283–84 (Iowa 1983). In this case, the petition certainly contains sufficient facts to inform the defendants of the events that give rise to the claim and the claim's general nature. We thus hold that the district

court erred in concluding that the estates' tort claims were subject to a heightened pleading standard and dismissing those claims based on an insufficiency in the pleadings.

**B. The Public-Duty Doctrine.** The estates also challenge the district court's dismissal of the claims based on the public-duty doctrine. Under the public-duty doctrine, a governmental entity generally can't be held liable for a plaintiff's injury that results from the governmental entity's breach of a duty owed to the public at large and not to the individual plaintiff. *Fulps v. City of Urbandale*, 956 N.W.2d 469, 475 (Iowa 2021). More specifically, we have said that the doctrine protects governmental entities from liability when (1) "the injury to the plaintiff was directly caused or inflicted by a third party or other independent force" and (2) "the plaintiff alleges a governmental entity or actor breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent force." *Id.* at 473–74.

Our cases illustrate how we have applied the doctrine. In *Kolbe v. State*, for instance, we applied the doctrine to affirm summary judgment in a case alleging that the department of transportation (DOT) had negligently and improperly issued a driver's license to a visually impaired driver. 625 N.W.2d 724–25, 729–30 (Iowa 2001) (en banc). The plaintiff, a bicyclist, alleged that he had been struck by the driver and suffered severe injuries because the DOT had not followed state law and regulations in issuing the license. *Id.* at 724. We concluded, however, that the relevant licensing provisions were "for the benefit of the public at large" and that there was no "special relationship" between the plaintiff and the state, so the public-duty doctrine barred the claim. *Id.* at 729.

In *Raas v. State*, we then examined whether the public-duty doctrine applied to claims brought by two plaintiffs injured by a pair of escaped prison inmates. 729 N.W.2d 444, 446, 448 (Iowa 2007). The inmates attacked the first plaintiff while he was in the parking lot of the prison, where he had gone to visit a family member. *Id.* at 446. The inmates attacked the second plaintiff some distance away, where he was fishing at a river. *Id.* We held that the first victim attacked in the parking lot was an "invitee" on state premises who had sufficiently alleged a special relationship with the State, and thus an exception to the public-duty doctrine applied. *Id.* at 450. But for the victim who was attacked off-premises, we held that the public-duty doctrine barred the claims, as this victim alleged only a breach of a general duty to protect the public at large. *Id.*

In *Estate of McFarlin v. State*, we applied the public-duty doctrine to claims brought against the state by the estate of a child who was killed when a boat struck a submerged dredge pipe in a public lake. 881 N.W.2d 51, 53, 63–64 (Iowa 2016). Although the state owned the lake in public trust, the dredge pipe was owned and operated by local entities, and those local entities were responsible for placing buoys on the lake to mark the pipe. *Id.* at 53–54. We reasoned that liability for injuries associated with the dredging resided with those in control of the dredging operation, not the state. *Id.* at 64. Any "duty of the State to enforce statutory obligations of the dredge operators," we concluded, was owed to the public at large and did not give rise to a duty to protect boaters from the local entities' work. *Id.* at 61–62. We thus held that the public-duty doctrine barred the estate's common law claims against the state. *Id.* at 63–64.

In *Johnson v. Humboldt County*, a vehicle veered off a county road and struck a concrete embankment, injuring a passenger in the vehicle. 913 N.W.2d

256, 258–59 (Iowa 2018). The embankment, built by a private property owner to enable vehicles to cross a ditch between the road and his property, was situated on the county's right-of-way easement but off the highway itself. *Id.* at 259. The injured passenger sued the county for failing to cause the removal of the embankment, citing Iowa Code § 318.4's requirement that "[t]he highway authority shall cause all obstructions in a highway right-of-way under its jurisdiction to be removed." *Id.* We observed that the county's requirement to remove obstructions was "a duty owed to *all* users of this public road," with the claim centering on the county's alleged failure to take affirmative action to remove an obstruction placed by a third party. *Id.* at 261, 267. As a result, we held that the public-duty doctrine barred the passenger's common law claims against the county. *Id.* at 262.

In *Breese v. City of Burlington,* an injured bicyclist sued the City of Burlington after falling off a ten-foot-high sewer box that appeared to be part of the city's public bike trail system. 945 N.W.2d 12, 15 (Iowa 2020). The cyclist alleged that the city negligently connected its bike trail to the elevated sewer box without installing guardrails or posting warning signs to trail users, causing the unsuspecting cyclist to ride onto the sewer box and plummet over the edge. *Id.* We concluded that the bike path was an instrumentality "built, owned, operated, or controlled" by the city, and we thus held that the public-duty doctrine did not bar the negligence claim against the city. *Id.* at 21.

In *Fulps v. City of Urbandale,* an injured pedestrian who broke her arm after tripping on an uneven sidewalk sued the City of Urbandale for negligently maintaining the sidewalk. 956 N.W.2d at 470–71. The pedestrian alleged that the city built the sidewalk but then failed to repair uneven portions and failed to warn of the danger it created. *Id.* at 471. We described the public-duty doctrine

"as a limit on suing a governmental entity for not protecting the public from harm caused by the activities of a third party." *Id.* at 475. But in that case, we concluded that the harm resulted not because of a third party's action but rather the city's own alleged negligence as a property owner. *Id.* We thus held that the public-duty doctrine did not bar the pedestrian's claim. *Id.* at 475–76.

Finally, in *Farrell ex rel. Estate of Farrell v. State*, the estate of a deceased driver sued two cities and the state after a driver allegedly confused an exit ramp with an entry ramp late at night and drove into oncoming traffic, causing a fatal crash. 974 N.W.2d at 135. The estate alleged that the defendants negligently designed, constructed, and operated a confusing interchange system and that they opened the interchange to traffic before completing necessary safety work, including installing proper lighting, road markings, and signage. *Id.* at 135–36. We held that the public-duty doctrine did not bar the claims, reasoning that, as in *Breese* and *Fulps*, "the government defendant owned the dangerous condition" and its "affirmative negligence, or misfeasance, created the danger." *Id.* at 139.

In cases implicating the public-duty doctrine, we often consider whether the governmental entity's alleged actions constitute *nonfeasance* or *misfeasance*. *See Johnson*, 913 N.W.2d at 266–67. Nonfeasance is when a government actor had a duty to act, usually based on a statute, rule, or ordinance, yet failed to take action. *Breese*, 945 N.W.2d at 20. Misfeasance is when the government "affirmatively acts and does so negligently." *Johnson*, 913 N.W.2d at 267. In cases involving nonfeasance, the public-duty doctrine generally applies, and the governmental entity thus may not be held liable unless the plaintiff can otherwise show it had a special relationship with the governmental entity. *See, e.g., Raas*, 729 N.W.2d at 449–50. In cases involving misfeasance, the

public-duty doctrine generally does not apply. *See, e.g., Farrell,* 974 N.W.2d at 139.

In this case, the State argues that what the petition alleges is nonfeasance, akin to the negligence claim in *McFarlin,* because the State did not own or control the low-head dam, just as it did not own the dredge pipe in *McFarlin.* The County and City likewise argue nonfeasance, contending that their failure to manage the dam, which they argue is a duty owed to the general public, caused the injury. The estates counter that all defendants engaged in misfeasance.

That the State owns the Turkey River in public trust is not, by itself, sufficient to determine whether the public-duty doctrine applies. As we held in *McFarlin,* ownership of a body of water for the public's benefit does not alone create liability. 881 N.W.2d at 63. In addition, the plaintiffs' allegation that the State provided funding to the city to remove or mitigate the dam does not preclude the State's reliance on the public-duty doctrine. *See id.* at 54 (noting that the State reimbursed the dredge owner for dredging costs when its budget permitted). Moreover, allegations that the State failed to exercise regulatory authority over the dam or the river—such as by assuring that warning sign criteria were complied with—generally are the kinds of claims foreclosed by the public-duty doctrine. *Id.* at 64 (noting that "regulatory oversight" falls within the public-duty doctrine); *see also Johnson,* 913 N.W.2d at 261, 267; *Kolbe,* 625 N.W.2d at 729.

Yet the estates argue that *McFarlin* is distinguishable from this case because in this case all the defendants worked to create and designate the Turkey River Water Trail and invited boaters, tubers, and other recreationalists onto the river despite the known dangers of the dam. The State counters that

designating something as a water trail is much like opening a highway for public use, for which the State owes no special duty to individual users of the highway.

On these points, our reasoning in the foregoing cases guides the analysis. In *Breese,* we concluded that the danger was created not by the existence of the sewer box itself but by the city's connection of its bike trail to the sewer box without implementing necessary safety measures after it invited recreationalists to use the trail. *See* 945 N.W.2d at 21. Similarly, in *Fulps,* we concluded that the city's liability stemmed from its installation of the sidewalk, followed by its failure to maintain and repair it. 956 N.W.2d at 475. And in *Farrell,* we concluded that "the government defendants' affirmative negligence created a dangerous condition on their own property that was a cause of the fatal accident." 974 N.W.2d at 138.

In this case, the allegations vary by defendant. The City is alleged to own the dam itself and the property abutting the river in the vicinity of the dam, including the emergency portage. If these facts are true, we have difficulty seeing how the public-duty doctrine would protect the City. Its position would be analogous to the city in *Breese,* the city in *Fulps,* and the governmental defendants in *Farrell.*

Additionally, the petition alleges that each of the defendants posted the warning signs along the trail but that the signs were neither "properly positioned" nor "properly maintained." According to the petition, four of the five warning signs that the defendants posted about the low-head dam were not visible to people in the river, and thus Kahn and Hodges remained unaware of the dam until it was too late.

In this respect, the petition thus presents not a failure to comply with a uniquely governmental duty imposed on a governmental body by a law or

regulation, but an affirmative act to install and maintain signs that was then undertaken negligently. *See Farrell*, 974 N.W.2d at 138–39; *Fulps*, 956 N.W.2d at 475. Taking the petition's allegations as true, as we must, we conclude that the public-duty doctrine does not bar at least some aspects of the estates' claims against each of the defendants. We thus reverse the district court's ruling granting dismissal of all defendants on this issue.

**C. The State Tort Claims Act.** The estates argue that the district court erred in granting the State's motion to dismiss based on the alternative ground that state sovereign immunity applied. The State's sovereign immunity arguments have two parts. First, the State argues that because private parties can't be sued for the type of claim that the estates bring here under the State Tort Claims Act, the State may not be sued either. Second, the State argues that because the petition alleges a violation of the State's exercise of a discretionary function to manage public waters, sovereign immunity also applies.

As to the first argument, the State recites that Iowa Code § 669.2(3)(*a*), in the definition of "*claim*," authorizes monetary claims against the State only "under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death." With this definition in hand, the State then points to Iowa Code § 461C.3(1), which states that "a holder of land does not owe a duty of care to keep the premises safe for entry or use by others for a recreational purpose . . . or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Iowa Code § 461C.2(5) lists the activities that constitute a "recreational purpose." Taking these statutes as its premises, the State offers a syllogism: because the State waived sovereign immunity in § 669.2(3)(*a*) only for claims for which a private party may be held liable, and because private

landholders are not liable for injuries resulting from recreational activities on their property under § 461C.3(1), the State is not liable for the plaintiffs' injuries resulting from their participation in a recreational activity on the Turkey River.

But the definition of "holder" in § 461C.2(3) contains an important exception: "Holder" is defined as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises; provided, however, *holder shall not mean the state of Iowa*, its political subdivisions, or any public body or any agencies, departments, boards, or commissions thereof." Iowa Code § 461C.2(3) (emphasis added). So by the statute's express terms, the State does not receive the benefit of the immunity that the statute provides. *Id.*

When a specific provision in a statute appears to conflict with a general provision, our canons of construction suggest that the specific provision is treated as an exception to the general provision. *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). Section 461C.2(3) provides a specific carveout for the state that negates landholder immunity for recreational activities, while § 669.2(3)(*a*) is a general definition of "claims" described in the tort claims act. We thus refuse to read chapter 461C—which unambiguously *denies* landholder immunity to the State—as the springboard to say that the State is in fact *owed* immunity under the definition of "claim" in the tort claims statute. The district court, in our view, erred in concluding otherwise.

Turning to the second argument, the State contends that the petition challenges only discretionary decisions for which the State possesses statutory immunity. Colloquially known as "discretionary function immunity," the immunity bars claims against the State "based upon the exercise or performance

or the failure to exercise or perform a discretionary function or duty." Iowa Code § 669.14(1). According to the State, each of the actions referenced in the petition—designating a water trail, promoting its use, providing funds to remove or modify the low-head dam, and failing to maintain visible warning signs—are all discretionary decisions protected under § 669.14(1).

In determining whether discretionary function immunity applies, we have adopted the test articulated in *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). *Goodman v. City of Le Claire*, 587 N.W.2d 232, 238 (Iowa 1998). That test presents two inquiries: (1) whether the State exercised an element of judgment or discretion, and if so, (2) whether that judgment or discretion is the type for which discretionary function immunity is designed to provide protection. *Schmitz v. City of Dubuque*, 682 N.W.2d 70, 72 (Iowa 2004). The State bears the burden on both parts of the test. *Madden v. City of Eldridge*, 661 N.W.2d 134, 138 (Iowa 2003).

The State raises discretionary function immunity as an affirmative defense. We have cautioned that "[a] motion to dismiss assumes the truth of facts well pleaded in the pleading attacked but is not a proper vehicle for the submission of affirmative defenses." *Harrison v. Allied Mut. Cas. Co.*, 113 N.W.2d 701, 702 (Iowa 1962); *see also Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) (Easterbrook, J.) (holding that even under the federal rules' heightened pleading standards, "complaints need not anticipate affirmative defenses; neither *Iqbal* nor *Twombly* suggests otherwise"). As a result, at the motion to dismiss stage, a petition will only fail based on an affirmative defense if the plaintiff "plead[ed] himself out of court." *White v. Harkrider*, 990 N.W.2d 647, 656 (Iowa 2023) (quoting *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 299 (Iowa 2020)).

The petition alleges that the State's failure to maintain the area around the warning signs on the river was not a decision or considered choice but rather the result of inattention. The petition alleges, in other words, that *after* the State had already decided to post warning signs, and did in fact post the signs, the State thereafter negligently let those signs fall into disrepair or otherwise become obstructed from view. Similarly, although the State exercised discretion in awarding grant funds to the city to mitigate the low-head dam's danger to the public, the petition alleges that the State's failure to monitor the city's implementation of the funds toward remediating the dam's danger was not a considered choice but another act of inattention. In short, the petition focuses the claims on what might be described as *the absence of a decision* by the State.

We are unable to conclude that what the petition describes as indecision nonetheless involves "social, economic, and political policy" decisions of the type that the immunity was designed to protect. *Shelton v. State*, 644 N.W.2d 27, 30 (Iowa 2002). At this stage, the State has not met its burden to show that the estates pleaded themselves out of court by laying out facts in their petition establishing the State's discretionary function immunity. *See White*, 990 N.W.2d at 656. As a result, we reverse the district court's ruling granting the State's dismissal on this ground as well.

**D. Recreational Immunity.** In the district court, the County and City argued that the estates' claims were barred by a recreational immunity provision in the Iowa Municipal Tort Claims Act, Iowa Code § 670.4(1)(*o*). In stating the grounds for its ruling as to the County, the district court recited that it was granting dismissal on two grounds: the heightened pleading standard and the public-duty doctrine. The district court went on to grant the City's motion to dismiss "for the same reasons." The City argues that these "same reasons" in

fact refer to the arguments in the City's *brief*, which the district court also referred to, and which also included a recreational immunity argument. When the estates did not discuss recreational immunity in their opening brief, the County and City argued in response that the estates waived any challenge to the district court's ruling on this issue. The estates in their reply brief argued that the "same reasons" referred to the two grounds for granting the County's dismissal, not the brief. We agree with the estates and read the district court's reference to "same reasons" to refer to the two grounds that the district court mentioned supporting the County's dismissal: the heightened pleading argument and the public-duty doctrine argument. As a result, we find no waiver on this issue.

An appellate court may affirm a district court ruling on any ground urged by the successful party in the district court and again on appeal, even if the district court didn't rely on that ground in its ruling. *Veatch v. City of Waverly*, 858 N.W.2d 1, 7 (Iowa 2015). Recreational immunity is an exception to the types of claims that a plaintiff may bring against a municipality under the Municipal Tort Claims Act. The recreational immunity exception states:

> Any claim for injuries or damages based upon or arising out of an act or omission of an officer or employee of the municipality or the municipality's governing body and arising out of a recreational activity occurring on public property where the claimed injuries or damages resulted from the normal and expected risks inherent in the recreational activity and the person engaging in the recreational activity was voluntarily on the public property where the injuries or damages occurred and knew or reasonably should have known that the recreational activity created a substantial risk of injuries or damages.

Iowa Code § 670.4(1)(*o*).

The estates argue that their petition raises fact questions about two elements of this immunity that prevent dismissal: (1) whether the injury was

within "the normal and expected risks inherent in the recreational activity," and (2) whether the injured person "knew or reasonably should have known that the recreational activity created a substantial risk of injuries or damages." *Id.* The County and City argue that low-head dams are part of the normal risks of river recreation and that the injury sustained here—death by drowning—is an inherent risk of floating on an innertube down a river, and one that users know or reasonably should know.

This question requires some consideration about the level of generality to apply to the phrase "expected risks inherent in the recreational activity." The County and City argue that it refers here to the risk of drowning while floating on an innertube down a river. But that's too constrained a reading of what the petition alleges. The petition describes not simply a risk of drowning while tubing but a risk of drowning *resulting from going over an unforeseen low-head dam* while tubing. The estates have sufficiently alleged that low-head-dam drowning is neither a normal nor expected risk inherent in tubing and that Kahn and Hodges neither knew nor reasonably should have known that floating on a tube down a public water trail created a substantial risk of a low-head-dam drowning.

Again, on a motion to dismiss, we assume that all the facts alleged in the plaintiff's petition are true. *Meade v. Christie*, 974 N.W.2d 770, 772 (Iowa 2022). This is because the only thing at issue is the plaintiff's "right of access to the district court, not the merits of [its] allegations." *Richards v. Iowa Dep't of Revenue & Fin.*, 454 N.W.2d 573, 574 (Iowa 1990). Because the estates have sufficiently pleaded an exception to the recreational immunity statute, we will not affirm the dismissal of the claims against the County and City on this alternative ground.

**III. Conclusion.**

We thus reverse the district court's dismissal of the claims against the defendants and remand for further proceedings.

**Reversed and Remanded.**